IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LAWRENCE JOSEPH FLORENTINE, a/k/a LARRY,

*Defendant-Appellant.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA AT SPARTANBURG
THE HONORABLE DONALD C. COGGINS, JR., PRESIDING

————————————

**BRIEF OF APPELLEE**

————————————

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

LEESA WASHINGTON (FED. ID 06973)
ASSISTANT U.S. ATTORNEY
55 BEATTIE PLACE, SUITE 700
GREENVILLE, SC 29601
TEL. (864) 282-2100
Leesa.Washington@usdoj.gov

*COUNSEL FOR APPELLEE*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES...................................................................................... iii

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUE.................................................................................2

     I.     WHETHER THE DISTRICT COURT ERRED IN DENYING FLORENTINE'S MOTION TO DISMISS A CHARGE FOR USE OF FIRE IN THE COMMISSION OF INTERSTATE DOMESTIC VIOLENCE RESULTING IN DEATH FOR FAILURE TO STATE AN OFFENSE?

STATEMENT OF THE CASE.................................................................................3

SUMMARY OF ARGUMENT..............................................................................13

ARGUMENT .........................................................................................................14

     I.     THE DISTRICT COURT DID NOT ERR IN DENYING FLORENTINE'S MOTION TO DISMISS COUNT 4 FOR FAILURE TO STATE AN OFFENSE. ...............................................14

          A.     Standard of Review...................................................................14

          B.     The district court did not err in finding that interstate domestic violence resulting in death is a continuing offense that did not end upon the murder of the victim...........................................................................................14

          C.     The undisputed facts show Florentine actively employed fire in the commission of interstate domestic violence...................................................................22

     II.     ASSUMING THE DISTRICT COURT ERRED BY NOT DISMISSING COUNT 4, PLENARY RESENTENCING IS NOT WARRANTED. .........................................................................27

i

CONCLUSION ...........................................................................................29

STATEMENT WITH RESPECT TO ORAL ARGUMENT...................................20

CERTIFICATE OF COMPLIANCE.........................................................................31

CERTIFICATE OF SERVICE ..............................................................................32

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Bailey v. United States*,
   516 U.S. 137 (1995)............................................................23

*Grunewald v. United States*,
   353 U.S. 391 (1957)............................................................21

*Smith v. United States*,
   508 U.S. 223 (1993)............................................................23

*Toussie v. United States*,
   397 U.S. 112 (1970)........................................................ 16, 18

*United States v. Banks*,
   104 F.4th 496 (4th Cir. 2024)........................................ 28, 29

*United States v. Challoner*,
   65 F. App'x 222 (10th Cir. 2003)........................................24

*United States v. Colvin*,
   353 F.3d 569 (7th Cir. 2003)........................................ 25, 26

*United States v. Darby*,
   37 F.3d 1059 (4th Cir. 1994)..............................................14

*United States v. Desposito*,
   704 F.3d 221 (2d Cir. 2013)........................................ 23, 24

*United States v. Dillard*,
   214 F.3d 88 (2nd Cir. 2000)...............................................16

*United States v. Helem*,
   186 F.3d 449 (4th Cir. 1999).................................... passim

*United States v. Ide*,
   624 F.3d 666 (4th Cir. 2010)..............................................14

*United States v. Ihmoud,*
  454 F.3d 887 (8th Cir. 2006)..................................................26

*United States v. Larsen,*
  615 F.3d 780 (7th Cir. 2010)..................................................15

*United States v. Mann,*
  161 F.3d 840 (5th Cir. 1998)..................................................21

*United States v. Martin,*
  523 F.3d 281 (4th Cir. 2008)..................................................22

*United States v. McAuliffe,*
  490 F.3d 526 (6th Cir. 2007)........................................... 25, 26

*United States v. Page,*
  167 F.3d 325 (6th Cir. 1999)........................................... 15, 18

*United States v. Patel,*
  370 F.3d 108 (1st Cir. 2004) .......................................... 23, 25

*United States v. Rodriguez–Moreno,*
  526 U.S. 275 (1999)............................................................17

*United States v. Ruiz,*
  105 F.3d 1492 (1st Cir. 1997) ..............................................25

*United States v. Savillon-Matute,*
  636 F.3d 119 (4th Cir. 2011) ...............................................28

*United States v. Seals,*
  130 F.3d 451 (D.C. Cir. 1997) .............................................17

*United States v. Severns,*
  559 F.3d 274 (5th Cir. 2009)................................................27

*United States v. Weaver,*
  659 F.3d 353 (4th Cir. 2011) .................................................9

*United States v. Wildes,*
  120 F.3d 468 (4th Cir. 1997)................................................23

iv

*United States v. Wills*,
  346 F.3d 476 (4th Cir. 2003)..................................................................17

*United States v. Zayac*,
  765 F.3d 112 (2d Cir. 2014)..................................................................17

*United States v. Zendeli*,
  180 F.3d 879 (7th Cir. 1999)..................................................................26

Federal Statutes

18 U.S.C. § 844(h)(1)..................................................................23

18 U.S.C. § 2261..................................................................18

18 U.S.C. § 2261(a)(2).......................................................... 15, 16, 18

18 U.S.C. § 2261(b)(1)-(5) ..................................................................8

18 U.S.C. § 2262..................................................................18

18 U.S.C. § 3237(a) ..................................................................17

Pub.L. No. 97–298 (1982) ..................................................................27

*Violence Against Women Act of 1993*,
  S.Rep. 103-138 (1993)..................................................................18

*Violent Crime Control and Law Enforcement Act of 1994,*
  Pub.L. No. 103-322, 108 Stat.1796 (1994) .......................................18

Other Authorities

*American Heritage Dictionary* (5th ed. 2019)………………….................................18

*Webster's Third New International Dictionary* (1993)  ………………...............18

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. A final judgment order was entered against Appellant Lawrence Joseph Florentine on April 9, 2024. JA327-332. Florentine filed a timely notice of appeal. JA333. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

I.     WHETHER THE DISTRICT COURT ERRED IN DENYING FLORENTINE'S MOTION TO DISMISS A CHARGE FOR USE OF FIRE IN THE COMMISSION OF INTERSTATE DOMESTIC VIOLENCE RESULTING IN DEATH FOR FAILURE TO STATE AN OFFENSE?

# STATEMENT OF THE CASE

This case arises from the convictions of Lawrence Joseph Florentine for interstate domestic violence resulting in death; use of a firearm during and in relation to a crime of violence to cause death; obstruction of justice; and use of fire in the commission of interstate domestic violence resulting in death. On September 6, 2018, Florentine, age 51, married Nicole Zahnd Florentine ("Nicole"), age 34. JA339, ¶ 9. The couple moved into Florentine's residence in Rock Hill, South Carolina. JA339, ¶ 9.

The relationship was volatile. JA64-65; JA68. During multiple instances in December 2019, officers with the Rock Hill Police Department and the York County Sheriff's Office were dispatched to the couple's home and elsewhere in response to reports of domestic violence committed by Florentine upon Nicole. JA64-65; JA68; JA339-340, ¶¶ 10-14. During a December 2, 2019, incident, Nicole reported to police that Florentine choked her, stole her dogs and took her cell phone to prevent her from calling police. JA339, ¶¶ 10-11. Florentine was charged with criminal domestic violence third degree. JA339, ¶ 11; JA355, ¶ 99. During a December 10-11, 2019, incident, Nicole reported to police that Florentine told her he was "going to kill her and burn her things" and that he actually burned her personal belongings in a fire pit in their yard. JA339-340, ¶¶ 12-14. She also reported that Florentine threatened to kill her and her dogs, "strangled her with both hands to the point where

she could not breathe," and "punched her with a closed fist multiple times on the side of her head." JA339-340, ¶ 14. Florentine was charged with two counts of criminal domestic violence second degree. JA339-340, ¶ 14; JA355, ¶ 100.

From on or around April 2, 2020, through May 2020, Nicole and Florentine were separated from each other. JA340, ¶¶ 16, 58. During that period, Nicole lived with her grandparents, Herbert and Beverly Flavell, in Williamston, South Carolina; however, she and Florentine kept in touch with each other. JA340, ¶¶ 18-19; JA340, ¶ 41; JA348, ¶¶ 59-60. On May 23, 2020, the couple's Rock Hill home was destroyed by fire. JA65; JA68; JA340, ¶ 18. Florentine sent photographs of the burning house and text messages to Nicole in which he indicated that he intentionally set their property on fire. JA65; JA68; JA340-341, ¶¶ 18-21. He was charged with arson in state court. JA356, ¶ 106.

According to witnesses, cell phone location data, surveillance camera video footage and motel occupancy records, from at least June 3, 2020, through at least June 9, 2020, Nicole and Florentine reunited. JA344, ¶¶ 40-42, 51. The couple was traveling in a blue Nissan Rogue in Greenville County, South Carolina, in Rock Hill, South Carolina, and in various locations in North Carolina. JA341, ¶ 23; JA344, ¶¶ 40, 42; JA346, ¶ 51; JA348-349, ¶¶ 61, 66. Nicole regularly communicated with her grandparents, who were aware of the previous domestic violence incidents reported by Nicole. JA347-348, ¶¶ 56-58.

Beginning June 10, 2020, none of Flavell's text messages or calls to Nicole's phone were successful. She ultimately filed a missing person report with the York County Sheriff's Office. JA346, ¶¶ 50-51.

On June 13, 2020, a groundskeeper for Hill Cemetery in Fredonia, Kentucky, which is about a seven-hour drive from Greenville, South Carolina, called police to report what he believed to be a suspicious gravesite. JA65-66; JA68; JA341, ¶¶ 24-26. When a Caldwell County Sheriff's deputy arrived and uncovered what appeared to be burnt flesh, he called the Kentucky State Police for assistance. JA24. Additional officers responded to the cemetery and discovered a partially clothed, charred female body buried in a makeshift grave. JA65-66; JA341, ¶¶ 24-26. An autopsy determined that the manner of death was homicide by a .22 caliber bullet wound to the head. JA66; JA342, ¶ 27. The medical examiner found charring located on the frontal scalp, the face, the middle of the torso, the posterior right thigh and on both hands. JA342, ¶ 27. The body was eventually identified as that of Nicole. JA66; JA342, ¶ 27. A gas can was found behind a tree near the gravesite. JA66; JA341, ¶ 25. Gasoline is commonly used as a fire accelerant. JA66. DNA found on the gas can belonged to Florentine and Nicole. JA345, ¶ 45.

After Nicole's body was recovered, officers canvassed the area around the cemetery for potential witnesses and surveillance camera footage. On June 11, 2020, Florentine was captured by surveillance cameras attached to a farm supply store and

a gas station, both of which were in the vicinity of the cemetery. JA342, ¶¶ 28-30. Transaction records from the farm supply store showed that on June 11, Florentine purchased a gas can that matched the gas can found at the makeshift grave, a shovel, and a rake from the store. JA342, ¶ 28. A short time later, video surveillance cameras at a nearby convenience store captured Florentine as he pumped gas into the gas can, purchased snacks and left the store headed in the direction of the cemetery. JA342, ¶¶ 29-30. No image of Nicole was captured by surveillance cameras, and the precise time and place of Nicole's killing is unknown. Based on his presence in Fredonia, Kentucky, on June 11, 2020, agents determined the couple left Greenville County sometime between June 9 and June 11, and traveled to Kentucky. The route they traveled to Kentucky is unknown.

On June 19, 2020, agents with the South Carolina Law Enforcement Division (SLED) delivered the death notice to Nicole's grandparents. JA343, ¶ 34. Agents did not share the details, facts or circumstances surrounding Nicole's death with her grandparents. With no knowledge of how Nicole died or was found, Beverly Flavell told the agents that Florentine had previously threatened to kill Nicole, set her on fire and bury her with a bulldozer so no one would ever find her. JA343, ¶ 34.

After he buried Nicole's body in the cemetery, Florentine fled Kentucky. Twelve days after he was last seen in Fredonia, Florentine was arrested and taken

into custody in Denver, Colorado, on June 23, 2020.[1] JA344, ¶¶ 38-39. On August 10, 2020, Florentine was charged by a grand jury in the Commonwealth of Kentucky with murder-domestic violence and abuse of a corpse. JA345, ¶ 47. He was eventually extradited to Kentucky to face the charges. Florentine moved to dismiss the murder-domestic violence indictment for lack of territorial jurisdiction. *Commonwealth of Kentucky v. Lawrence Florentine*, Indictment No. 20-CR-00066, Motion to Dismiss the Charge of Murder, Caldwell Circuit Court, 56th Judicial Circuit, January 28, 2022. On October 20, 2022, Florentine was arrested in the Western District of Kentucky based on a complaint filed in the District of South Carolina charging him with interstate domestic violence resulting in death and use of a firearm to cause death. JA4, DE8. The Kentucky indictments were subsequently dismissed. JA356, ¶¶ 102-103.

### Federal Indictment

On December 13, 2022, a federal grand jury in the District of South Carolina returned a four-count indictment which charged that Florentine did knowingly and unlawfully cause his spouse and intimate partner, Nicole, to travel in interstate commerce by force, coercion, duress and fraud, and in the course of and to facilitate

---

[1] Police recovered .22 caliber cartridges in the center console of the Nissan and located Nicole's blood on the rear exterior of the vehicle.

such conduct and travel, did commit a crime of violence, namely murder, as defined in 18 U.S.C. § 1111, which resulted in the death of Nicole, in violation of 18 U.S.C. §§ 2261(a)(2), (b)(1)[2] (Count 1); use of a firearm during and in relation to a crime of violence, that is murder, to cause death, in violation of 18 U.S.C. §§ 924(c), (j) (Count 2); obstruction of justice, in violation of 18 U.S.C. § 1519 (Count 3); and use of fire in the commission of interstate domestic violence, in violation of 18 U.S.C. § 844(h) (Count 4). JA16-18.

## Motion to Dismiss

On October 12, 2023, Florentine moved to dismiss Count 4 for failure to state an offense. JA19-22. As to Count 4, the indictment charges:

> That on or about June 11, 2020, in the District of South Carolina and elsewhere, the Defendant . . . did knowingly use fire in the commission of a felony, namely, interstate domestic violence resulting in death, as charged in Count 1, in violation of Title 18, United States Code, Section 2261(a), which is prosecutable in a court of the United States . . . in violation of 18 U.S.C. § 844(h).

JA18. Count 1 charges:

> That between on or about June 9, 2020, and June 11, 2020, in the District of South Carolina and elsewhere, the Defendant . . . did knowingly and unlawfully cause his spouse and intimate partner . . . to travel in interstate commerce by force, coercion, duress and fraud, and in the course of and to facilitate such conduct and travel, did commit a

---

[2] Subsection (b)(1) is the penalty provision for § 2261(a)(2). The offense is punishable based on injury to the victim and ranges from not more than five years if there is no serious bodily injury and no weapon was used to a maximum of life, if death occurs from the violence. *See* 18 U.S.C. § 2261(b)(1)-(5).

crime of violence, namely murder, . . . which resulted in the death of [the victim] . . . in violation of 18 U.S.C. §§ 2261(a)(2), (b)(1).

JA16. Florentine argued that "use" in 18 U.S.C. § 924(c), which requires active employment of a firearm, extends to "use" as incorporated in 18 U.S.C. § 844(h) and should be given the same meaning. JA19-22; JA84-88; JA91-116. As such, he argued, Count 4 was insufficient because it did not allege that he actively employed fire to commit murder because the murder was complete prior to his use of fire. JA19-22; JA84-88; JA91-116.

The Government opposed Florentine's motion to dismiss Count 4 (JA72-83), however, it did not oppose the district court's consideration of the motion on its merits.[3] JA74-75. Florentine replied. JA84-88. In denying the motion to dismiss, the district court found the indictment tracked the statutory language, listed the elements of the offense and was sufficient on its face. JA89-116; JA165-172.

<u>Guilty Plea</u>

On October 17, 2023, pursuant to a written plea agreement, JA23-30, Florentine entered a conditional plea to the indictment. JA31-71. Under the terms of

---

[3] The Government did not contest the district court's ability to consider Florentine's motion on the merits and believes the issue is preserved for appellate review. *See United States v. Weaver*, 659 F.3d 353, 356 n.* (4th Cir. 2011) (collecting cases) (district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts).

the agreement, Florentine reserved his right to appeal any adverse decision of the district court on his then-pending motion to dismiss Count 4 for failure to state an offense. JA29, ¶ 11.

On February 21, 2024, the U.S. Probation Office published a revised presentence report (PSR). In the PSR, the probation officer applied U.S.S.G. § 2A1.2 and a two-level increase pursuant to § 3C1.1 for obstruction of justice, which resulted in an adjusted offense level of 40. JA360, ¶ 132. His adjusted offense level was reduced pursuant to § 3E1.1 for acceptance of responsibility. JA360, ¶¶ 134-135. These calculations produced a total offense level of 37, which combined with a criminal history category of III, resulted in a sentencing range of 210-263 months' imprisonment as to Counts 1, 2 and 3. JA363, ¶ 158. Pursuant to 18 U.S.C. § 844(h), the mandatory statutory penalty for Count 4 is 120 months consecutive to any other term of imprisonment. Thus, the total guideline range was 330-382 months' imprisonment. JA363, ¶ 158.

Motion to Reconsider

Florentine moved the district court to reconsider the district court's order denying his motion to dismiss as it failed to reach the merits of his motion. JA173-175. The Government continued to oppose the motion to dismiss (JA176-180), however, it conceded that Florentine killed the victim by shooting her in the head—not by fire. No stipulation as to the precise date and time of the death was reached

between the parties. JA177. In subsequent briefing by the parties, the Government conceded the following facts pertinent to Florentine's motion: 1) that Florentine killed the victim by shooting her in the head and 2) that he subsequently set her body on fire and buried the body. JA181-188. The district court denied the motion to reconsider. JA189-197.

Motion to Withdraw Guilty Plea

Believing that he had not sufficiently preserved the issues raised in his motion to dismiss for appeal pursuant to his plea agreement, Florentine moved to withdraw his guilty plea. JA198-206. Prior to sentencing, the court held a hearing on Florentine's motion to withdraw his guilty plea. JA217-252. The district court agreed to consider the motion to dismiss Count 4 on its merits. JA217-252. At the conclusion of the hearing, Florentine withdrew his motion to withdraw his plea. JA250-252.

The district court then denied Florentine's motion to dismiss, finding that interstate domestic violence resulting in death is a continuing offense and that he used fire in the commission of that offense. JA249-250. The court stated in pertinent part:

> From the cases cited by the parties, as well as the Court's research, it is clear to this Court that the offense of interstate domestic violence is intended to be a continuing offense. The issue then becomes whether or not the defendant's (sic) death ends that offense or if further action beyond that point would still relate to that offense. In this case, specifically Count 4's relationship to Count 1. Because the Court finds

11

that the offense of interstate domestic violence, including interstate domestic violence resulting in death, is a continuing offense. The Court finds that the appropriate way to look at the offense is a continuum. And in this case the Court finds that the use of fire in connection with the predicate offense, that is Count 1 in this case, is used in connection with that offense when it occurs within that continuum.

As counsel has pointed out there does not seem to be case law defining the scope of this offense. There is case law from the Fourth Circuit cited by the government that is consistent with the Court's review of the law that indicates that this is a continuing offense. And the Court finds that with respect to this continuum, the use of fire within one day or two days of the shooting and killing of the defendant (sic) is still a use, in connection with, sufficient to support the fourth cause of action. Accordingly, upon reconsideration of the defense motion to dismiss, the Court finds that that motion should be denied.

JA249-251.

Sentencing

On April 9, 2024, Florentine was sentenced to 360 months' imprisonment: 240 months as to Counts 1, 2 and 3, to be served concurrently, and 120 months as to Count 4, to be served consecutively to all other counts. JA306-318; JA327-328. The court imposed a 5-year term of supervised release. JA318-321; JA329.

Recognizing that Florentine would appeal the denial of the motion to dismiss Count 4, the court made clear that it would have varied upward to a sentence of 360 months even if Count 4 had been dismissed:

I will also state that even had I ruled in the defense favor with respect to the legal application of Count 4 and its 120-month consecutive sentence, even if that count had been dismissed and I had simply treated that as relevant conduct, I would have imposed this same sentence as an alternate variance sentence in light of all of the facts and circumstances in this case as I indicated previously. To the extent that

such a sentence in the absence of that 120 months consecutive would require an upward variance, the government's motion is granted for the reasons the Court has previously stated.

JA321-322; *see* JA306-317.

## SUMMARY OF THE ARGUMENT

The Violence Against Women Act ("VAWA"), which includes provisions for investigating and prosecuting interstate domestic violence, was enacted to address the problem of domestic abusers who use interstate travel to evade detection and criminal liability by exploiting loopholes and deficiencies in state law enforcement agencies to prosecute their interstate crimes. The explicit language of § 2261 compels the conclusion that Congress intended the offense of interstate domestic violence be construed as a continuing offense. The district court correctly found 1) that interstate domestic violence resulting in death, the predicate felony for Count 4, was a continuing offense that did not end upon the murder of the victim, and it encompassed the continuum of conduct including the burning and burial of the victim's body, and 2) Florentine's use of fire to conceal his conduct and enable him to evade law enforcement detection and criminal responsibility was just as much a part of the offense of interstate domestic violence resulting in death as the violence itself. *United States v. Helem*, 186 F.3d 449 (4th Cir. 1999). His active employment of fire to conceal the ongoing crime was within the reach of § 844(h)(1). The district

13

court's denial of Florentine's motion to dismiss Count 4 for failure to state an offense should be affirmed.

## ARGUMENT

I. **THE DISTRICT COURT DID NOT ERR IN DENYING FLORENTINE'S MOTION TO DISMISS COUNT 4 FOR FAILURE TO STATE AN OFFENSE.**

### A. Standard of Review

Florentine contends that in denying his motion to dismiss Count 4 for failure to state an offense, the district court erroneously construed "used fire . . . to commit any felony" under 18 U.S.C. § 844(h)(1) to encompass concealment of the completed crime of interstate domestic violence resulting in death, which he claims ended after the victim was murdered. Appellant's Brief. This issue of statutory interpretation is one the Court reviews *de novo. United States v. Ide,* 624 F.3d 666, 668 (4th Cir. 2010). "Whether an indictment properly charges an offense is a matter of law which we may consider *de novo* if the defendant makes a timely objection to the indictment." *United States v. Darby*, 37 F.3d 1059, 1062 (4th Cir. 1994).

### B. The district court did not err in finding that interstate domestic violence resulting in death is a continuing offense that did not end upon the murder of the victim.

Contrary to Florentine's argument, the predicate felony for the § 844(h)(1) offense charged in Count 4 was interstate domestic violence resulting in

death under § 2261(a)(2), as charged in Count 1—not murder. An individual commits interstate domestic violence when the individual:

> [K]nowingly and unlawfully causes his spouse, intimate partner or dating partner . . . to travel in interstate commerce by force, coercion, duress and fraud, and *in the course of*, as a result of or to facilitate such conduct and travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner[.]

18 U.S.C. § 2261(a)(2) (2023) (emphasis added). "It is the victim's movement in interstate commerce—not the intrastate crime of violence—that implicates the Interstate Domestic Violence Act." *United States v. Larsen*, 615 F.3d 780, 785 (7th Cir. 2010) (rejecting defendant's argument that § 2261(a)(2) is unconstitutional because Congress lacks the authority to punish intrastate domestic violence under the Commerce Clause, holding the Act punishes a defendant for a victim's movement in interstate commerce, not the intrastate crime of violence); *see also United States v. Page,* 167 F.3d 325, 334 (6th Cir. 1999) (en banc) ("Because the triggering factor of § 2261(a)(2) is the movement of the victim across state lines, this statute . . . is a valid exercise of Congress's power to regulate the use of the channels of interstate commerce.") (internal quotation marks omitted).

The district court correctly held that interstate domestic violence resulting in death is a continuing offense. "[T]he doctrine of continuing offenses" applies when "the explicit language of the substantive criminal statue compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have

intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). Both the text of the interstate domestic violence statute and Congress's intent in passing the Interstate Domestic Violence Act establish that it is a continuing offense.

First, the plain language of the interstate domestic violence statute clearly contemplates a course of conduct that broadens its scope beyond that of a discrete, point-in-time offense. Section 2261(a)(2) speaks of a course of conduct, not merely a portion or an aspect of a given offense. *See* § 2261(a)(2) ("knowing and unlawfully causes his spouse . . . to travel in interstate commerce . . . and *in the course of* . . . such conduct and travel, commits or attempts to commit a crime of violence against that spouse" (emphasis added)).

Use of the phrase "in the course of" suggests not merely a passing instant but instead, as the district court described it, a "continuum" of time during which an event takes place, or an action is taken. JA249-250; *see Webster's Third* (defining "course" to mean "progress or progression through a series . . . or through a development or a period," or "an ordered continuing process, succession, or series"); *see also United States v. Dillard*, 214 F.3d 88, 93 (2nd Cir. 2000) (equating "in the course" with "during"). Common sense and ordinary rules of usage dictate that "in the course of" should encompass nothing less than all conduct comprising a given offense and the entire period during which the offense is being committed. The plain

16

language of § 2261(a)(2) compels the district court's conclusion that it is a continuing offense.

The venue statute provides additional authority to conclude that Congress intended that interstate domestic violence be treated as a continuing offense. *See* 18 U.S.C. § 3237(a). It defines continuing offenses as those "involving . . . transportation in interstate or foreign commerce." *Id.* And it further provides that, "except as otherwise expressly provided by enactment of Congress, [continuing offenses] may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." 18 U.S.C. § 3237(a). Interstate domestic violence "involves" transportation in interstate commerce under a plain reading of the word "involve." *See American Heritage Dictionary* (5th ed. 2019) (defining "involve" as "[t]o relate to or affect"). By its nature, the domestic violence crime is triggered by the involuntary interstate transportation of the victim; it logically cannot be complete as long as that conduct continues.[4] It is therefore a continuing offense for which

---

[4] Interstate kidnapping is a prototypical continuing offense. *United States v. Rodriguez–Moreno,* 526 U.S. 275, 281 (1999) ("A kidnaping, once begun, does not end until the victim is free"); *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003) (same); *see also United States v. Seals,* 130 F.3d 451, 462 (D.C. Cir. 1997) ("[T]he crime of kidnapping *continues* while the victim remains held and a ransom sought.") (emphasis in original). The offense of kidnapping resulting in death is not necessarily complete once the victim is dead. *United States v. Zayac*, 765 F.3d 112, 122 (2d Cir. 2014) (declined to decide when a kidnapping resulting in death offense definitively ends, but the *earliest* the kidnapping of the victim could have been complete was at the point defendant abandoned [and discarded] the body).

venue is proper in any district through which the defendant caused his spouse or intimate partner to move.

The nature of interstate domestic violence is also "such that Congress must assuredly have intended that it be treated as a continuing" offense. *See Toussie*, 397 U.S. at 115. One of the main reasons Congress enacted the VAWA was to address the problem of domestic abusers who take advantage of gaps and inadequacies of state law enforcement, by carrying or forcing their intimate partners across state lines under threat of further violence to avoid detection from the law. *See* S.REP. NO. 103–138, at 43, 62; Pub.L. No. 103–322, 108 Stat. 1796, 1902–55 (1994); *see also Page*, 167 F.3d at 328. Among numerous provisions, the Act criminalized interstate domestic violence and interstate violation of protection orders. *See* VAWA § 40221(a), 108 Stat. at 1926–31, 18 U.S.C. §§ 2261, 2262. This Court's decision in *United States v. Helem*, 186 F.3d 449 (4th Cir. 1999), explains why the policy considerations underlying VAWA and the nature of interstate domestic violence compel the conclusion that it is a continuing offense.[5]

_____

[5] *Helem* analyzed an earlier version of § 2261(a)(2), which made it unlawful to cause a spouse or intimate partner to cross a state line "by force, coercion, duress, or fraud and, in the course or as a result of that conduct," intentionally commit a crime of violence and thereby cause bodily injury. 18 U.S.C. § 2261(a)(2) (1997).

In *Helem*, the defendant severely beat and strangled his wife in their Maryland apartment until she lost consciousness. *Id.* at 451-52. The beating left his wife weak, in pain, barely able to see or speak, and in and out of consciousness. *Id.* at 452. To hide her condition and avoid responsibility, the defendant put his wife in the car and began driving south into Virginia and then North Carolina. *Id.* He eventually took her to the hospital and falsely reported to medical personnel that she had been injured in a car accident. *Id.* The defendant was ultimately arrested and, after trial, convicted of interstate domestic violence. *Id.* at 451.

On appeal, the defendant argued that interstate domestic violence does not reach acts of violence that occur before the interstate travel begins. *Id.* at 454. In affirming the interstate domestic violence conviction, the Court declined to restrict the statute to conduct that occurred during or after interstate travel and concluded, "the beating that took place inside the apartment occurred 'in the course of' [the defendant] forcibly 'causing' [the victim] to 'cross a State line.'" *Id.* at 455. In addition, the Court found the fact that the victim was transported across state lines "because he [defendant] did not want anyone to see the victim's condition, knowing the possible consequences for himself and knowing that interstate travel would make it more difficult for law enforcement to hold him liable for this crime," was a problem Congress intended the statute to address. *Id.* That "situation is precisely the type of situation that the Violence Against Women Act ('VAWA') was intended to

cover." *Id. Helem* establishes that the interstate domestic violence offense does not begin and end with the act of violence. It is, as the district court found, a continuing offense.

In arguing to the contrary, Florentine asserts that the crime of violence underlying the interstate domestic violence count was murder, which is complete at the victim's death, so that death "also completes the interstate domestic violence crime." Appellant's Brief at 11-12. Thus, he argues, "actions taken after the death are not part of the principal crime." Appellant's Brief at 12. His view of interstate domestic violence is not supported by the plain language of the statute, Congress's purpose in passing it, or this Court's decision in *Helem*. If the violence enables the defendant to cause his spouse to travel across state lines, the violence occurred "in the course of" that travel—even if it happened before the travel occurred. *Helem*, 186 F.3d at 455 ("[W]e hold that physical violence that occurs before interstate travel begins can satisfy the 'in the course of or as a result of that conduct' requirement of 18 U.S.C. § 2261(a)(2)."). Physical violence followed by interstate travel designed to evade law enforcement is, as *Helem* recognized, "precisely the type of situation" the VAWA was intended to cover. *Id.* Interstate domestic violence simply does not,

as Florentine contends, end when the act of violence is complete.[6] It continues through the interstate travel.

Florentine's reliance on *Grunewald* to support his argument that concealment of violence cannot be part of interstate domestic violence is, therefore, misplaced. Appellant's Brief at 10-11. *See Grunewald v. United States,* 353 U.S. 391, 405 (1957) (holding that "a vital distinction must be made between acts of concealment done in furtherance of the criminal objectives of the conspiracy where the successful accomplishment of the crime necessitates concealment, and acts of concealment done after the central objectives have been attained, for the purpose only of covering up after the crime"); *see also United States v. Mann,* 161 F.3d 840, 859 (5th Cir. 1998) ("[A]cts of concealment are part of the central conspiracy itself where the purpose of the main conspiracy, by its very nature, called for concealment." (internal citations and quotations omitted)). *Grunewald* addressed efforts to conceal

---

[6] Florentine cannot have it both ways. Florentine moved to dismiss the murder indictment in Kentucky for lack of jurisdiction asserting that he murdered his wife in South Carolina. *Commonwealth of Kentucky v. Lawrence Florentine*, Indictment No. 20-CR-00066, Motion to Dismiss the Charge of Murder, January 28, 2022; JA286-288; JA311. His theory in this case is that the offense of interstate domestic violence as charged in Count 1 ended with the murder. Appellant's Brief. Thus, he could not have committed the offense to which he pleaded guilty because (he claims) he killed his wife in South Carolina *and then* crossed state lines—which based on his theory, occurred after the interstate domestic violence resulting in death offense—was complete. However, on appeal, Florentine does not challenge his conviction on Count 1.

completed conspiracies. *Helem*, by contrast, addressed the same statute currently before this Court and held that forcing a spouse to travel across state lines to conceal a crime of violence is part of the offense of interstate domestic violence. The district court correctly held interstate domestic violence resulting in death is a continuing offense.

### C. The undisputed facts show Florentine actively employed fire in the commission of interstate domestic violence.

To survive Florentine's motion to dismiss Count 4, the Government needed only to allege that he committed the offense of interstate domestic violence resulting in death and that he used fire in the commission of that felony. *United States v. Martin*, 523 F.3d 281, 288 (4th Cir. 2008). Count 4 charges:

> That on or about June 11, 2020, in the District of South Carolina and elsewhere, the Defendant . . . did knowingly use fire in the commission of a felony, namely, interstate domestic violence resulting in death, as charged in Count 1, in violation of Title 18, United States Code, Section 2261(a), which is prosecutable in a court of the United States; . . . in violation of 18 U.S.C. § 844(h).

JA18. It alleges Florentine "used" fire in the commission of interstate domestic violence resulting in death. His undisputed conduct—burning and burying his wife after he murdered her and forced her to travel in interstate commerce—was an act of further degradation of his wife and integral to his attempts to conceal her murder and to evade detection and responsibility. JA343, ¶ 35.

Section 844(h)(1) creates a federal offense with an enhanced penalty for persons who commit crimes "that do not require but may involve the use of fire." *United States v. Patel,* 370 F.3d 108, 117 (1st Cir. 2004). Assuming Florentine is correct that the Supreme Court's interpretation of the term "use" from 18 U.S.C. § 924(c) in *Bailey v. United States*, 516 U.S. 137 (1995)—requiring "active employment of the firearm," meaning "a use that makes the firearm an operative factor in relation to the predicate offense"—applies to the term "use" in § 844(h), that standard is satisfied here. Several courts—including this Court—have explained that the term "use" in § 924(c) "must be given its 'ordinary or natural' meaning, a meaning variously defined as '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Bailey*, 516 U.S. at 145 (quoting *Smith v. United States*, 508 U.S. 223, 229 (1993)); *United States v. Wildes*, 120 F.3d 468, 470 (4th Cir. 1997).

All that is required to satisfy § 844(h) is that fire was employed as a part of the commission of the crime. 18 U.S.C. § 844(h)(1) ("Whoever uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States . . ."). Courts have therefore affirmed convictions where, for example, fire was used as a diversionary tactic before the felony offense is completed. *See, e.g., United States v. Desposito*, 704 F.3d 221, 227-29 (2d Cir. 2013) (setting a car on fire was integral to the bank robbery to divert police attention from the commission of the

robbery, which falls within the plain language of and constitutes "use of fire" under § 844(h)); *United States v. Challoner*, 65 F. App'x 222, 226 (10th Cir. 2003) (unpublished) (affirming § 844(h) conviction where the defendant used Molotov cocktails to set fire to an elementary school to distract law enforcement in an attempt to enable the defendant and his coconspirators to commit a bank robbery; court found that setting the school fire "occurred as part of Defendant's pre-planned attempt to commit an armed bank robbery"). Under these cases, Florentine "actively employed" fire in committing interstate domestic violence.

The undisputed evidence shows that Florentine, *in the course of* transporting Nicole from South Carolina to Kentucky, carried out his threat to kill her, to set her on fire and to bury her with a bulldozer so no one would ever find her. JA343, ¶ 35. His "active employment" of fire to conceal her murder and her body to evade detection is part of the offense itself because it was intended to—and did—"make it more difficult for law enforcement to hold him liable for this crime." *Helem*, 186 F.3d at 455. *Helem* makes clear that these actions were a part of the offense itself. *Id.* (holding the defendant removed the victim from her home state "because he did not want anyone to see her in that condition, knowing the possible consequences for himself and knowing that interstate travel would make it more difficult for law enforcement to hold him liable for his crime," and "[t]his situation is precisely the type of situation" VAWA "was intended to cover""). And *Desposito* and *Challoner*

make clear that the fire's integral role in committing the crime is sufficient to satisfy § 844(h).

Florentine's argument that fire "was not part of the commission of the crime" because it was not used to murder Nicole should be rejected. First, as noted above, the predicate crime was not murder; it was interstate domestic violence, which continued through his interstate travel and concealment of his violence. Second, neither the plain language of § 844(h)(1) nor any case law interpreting it requires fire to be *necessary* to committing the crime. *See Patel*, 370 F.3d at 117 ("The purpose of the using fire statute is to enhance penalties for crimes that do not require but may involve the use of fire."). Florentine's reliance on *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007), and *United States v. Colvin*, 353 F.3d 569, 570 (7th Cir. 2003), on this point is misplaced.

*McAuliffe* supports the proposition that fire need not be a "necessary predicate" for the commission of the underlying felony in order to satisfy § 844(h). The defendant in *McAuliffe* argued that under §§ 844(h) and (m), the requirement that "fire" be "used to commit" mail fraud was not met because he used the mails— not fire—to commit mail fraud as part of a scheme to deceive an insurance company into making payments for claimed losses due to fire damage. 490 F.3d at 534. The Sixth Circuit recognized that McAuliffe's interpretation of the statute has been rejected by several courts. *Id.* at 534-35 (citing *United States v. Ruiz*, 105 F.3d 1492,

1503-05 (1st Cir. 1997); *United States v. Zendeli*, 180 F.3d 879, 885 (7th Cir. 1999); *United States v. Ihmoud*, 454 F.3d 887, 890-91 (8th Cir. 2006)). Instead, the court held, the fact that the defendants "used" the mails in furtherance of the scheme to defraud does not diminish the fact that they also "employed" or "availed themselves of" fire to effect their scheme. *Id.* at 535. Here, as in *McAuliffe*, the fire enabled Florentine to carry out the ongoing offense of interstate domestic violence resulting in death; he actively employed fire to conceal the victim and her death.

*Colvin* is similarly unhelpful to Florentine. In that case, the Seventh Circuit held a conspiracy to threaten or intimidate persons in the free exercise or enjoyment of housing rights under 18 U.S.C. § 241 cannot be the predicate for the application of § 844(h)(1). 353 F.3d at 576. The court reasoned that a § 241 conspiracy does not require an overt act, so the conspiracy offense is the agreement alone; and "because fire was not used in this case to form that agreement, fire could not have been used to commit the § 241 conspiracy." *Id. Colvin* stands only for the unremarkable proposition that, if a defendant has not "employed" or "availed himself of" fire to commit his crime, he has not violated § 844(h)(1). Unlike in *Colvin*, Florentine *did* "employ" and "avail himself of" fire to commit his crime. Florentine's conduct was therefore within the reach of § 844(h)(1) as alleged in Count 4.[7]

---

[7] The statute is unambiguous, thus, there is no need to resort to legislative history. However, the legislative history behind the Anti–Arson Act of 1982, which added

\* \* \*

The district court correctly held that interstate domestic violence is a continuing offense. And the plain language of the statute, Congress's purpose in adopting it, and this Court's precedent all support the conclusion that the offense encompasses acts of concealment done to evade law enforcement detection and avoid criminal responsibility for domestic violence. Count 4 alleged, and the uncontroverted facts established, that when Florentine burned Nicole's body and buried her in a shallow grave in Kentucky to hide her murder, he used fire in the commission of interstate domestic violence resulting in death. The district court did not err by denying Florentine's motion to dismiss Count 4.

## II. ASSUMING THE DISTRICT COURT ERRED BY NOT DISMISSING COUNT 4, PLENARY RESENTENCING IS NOT WARRANTED.

Should the Court find the district court erred by denying Florentine's motion to dismiss Count 4, "[t]he question then becomes the scope of [the] remand

---

using "fire" to § 844(h)(1), supports application of the statute in this case. Congress intended to punish those who use fire to conceal a homicide. As it stated in explaining the rationale for the enhancement, "[f]ire is used extensively not only for the criminal purposes of extortion, terrorism and revenge, but to conceal other crimes such as homicide, and for fraud against insurance companies." *See* Pub.L. No. 97–298, § 2(b), 96 Stat. 1319 (1982); *United States v. Severns*, 559 F.3d 274, 284 (5th Cir. 2009) (quoting H.R. REP. No. 97-678, at 2 (1982)) ("Fire is used extensively not only for the criminal purposes of extortion, terrorism and revenge, but to conceal other crimes such as homicide, and for fraud against insurance companies.").

instruction." *United States v. Banks*, 104 F.4th 496, 516 (4th Cir. 2024). Where, as here, "the district court specifically engaged the question of whether it would impose the same sentence if the [challenged] convictions were reversed," the Court has found that "justice is best served by remanding for entry of an amended judgment without the need for a plenary resentencing." *Id.* "[I]t would make no sense to set aside [a] reasonable sentence and send the case back to the district court [when] it has already told [the Court] that it would impose exactly the same sentence, a sentence [the Court] would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (internal quotation marks omitted).

Florentine was sentenced to 360 months' imprisonment: 240 months as to Counts 1, 2 and 3, to be served concurrently, and a mandatory consecutive 120 months as to Count 4. JA306-318; JA327-328. During sentencing, the district court expressly stated that it would have imposed the same sentence as an upward variance if it had granted the motion to dismiss Count 4 for failure to state an offense. JA321-322. In doing so, the district provided extensive explanation of its judgment that the nature and seriousness of Florentine's conduct and his history and characteristics warranted a cumulative 360-month upward variant sentence under 18 U.S.C. § 3553(a) sentencing factors. *See* JA306-317. The 360-month sentence is within the statutorily authorized maximum sentence of life as to Count 1, pursuant 18 U.S.C.

§§ 2261(a)(2), (b)(1) and for Count 2, under 18 U.S.C. §§ 924(c), (j), and Florentine has not challenged the reasonableness of that sentence.

The district court made it abundantly clear that it would have imposed the same total sentence regardless of any error as to Count 4, and it justified the need for that sentence under the § 3553(a) factors. Given the record in this case, if Florentine's conviction on Count 4 is vacated, justice is best served by a limited remand with instructions for the district court to enter an amended judgment consistent with the vacatur of that count of conviction and a reimposition of a 360-month sentence, without the need for plenary resentencing. *Banks*, 104 F.4th at 516.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court affirm the district court.

## STATEMENT ON ORAL ARGUMENT

The United States respectfully suggests oral argument is not necessary in this case. The facts and legal issues are adequately presented in the materials before the Court, and oral argument likely would not aid the Court in reaching its decision.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: */s/Leesa Washington*
Leesa Washington (Fed. ID 06973)
Assistant United States Attorneys
55 Beattie Place, Suite 700
Greenville, SC 29601
Tel. (864) 282-2100
Email: Leesa.Washington@usdoj.gov

October 17, 2024

**Appeal No. 24-4206**
<u>United States v. Lawrence Joseph Florentine</u>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)</u>

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 281(c)(2) or 32(a)(7)(B) because:

    ☒ this brief contains 7018 number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2018</u> in <u>Times New Roman 14</u>.

<u>s/Leesa Washington</u>
Attorney for United States of America                    October 17, 2024

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LAWRENCE JOSEPH FLORENTINE,

*Defendant-Appellant.*

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on October 17, 2024, I electronically filed the attached Brief of Appellee with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit using the CM/ECF System. The CM/ECF System will send notice of this electronic filing with attached Brief to the following user, who serves as Counsel for Appellant:

Joshua S. Kendrick, PO Box 6938, Greenville, SC 29606

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: s/*Leesa Washington*
Leesa Washington (Fed. ID 06973)
Assistant U.S. Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
Tel. (864) 282-2100
Email: Leesa.Washington@usdoj.gov
*Counsel For Appellee*