No. 24-4206

# United States Court of Appeals
### *for the*
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

LAWRENCE JOSEPH FLORENTINE, a/k/a Larry,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT GREENVILLE

## REPLY BRIEF OF APPELLANT

JOSHUA S. KENDRICK
KENDRICK & LEONARD, P.C.
Post Office Box 6938
Greenville, South Carolina 29606
(864) 760-4000

*Counsel for Appellant*

COUNSEL PRESS    (800) 4-APPEAL • (811299)

# **<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

REPLY ARGUMENT ....................................................................................... 1

    1.    THE § 844(h)(1) ENHANCEMENT FOR USE OF FIRE ONLY APPLIES WHEN FIRE IS USED TO COMMIT A CRIME AND IT WAS ERROR FOR THE DISTRICT COURT TO APPLY THE STATUTE IN A CASE WHERE FIRE WAS USED AFTER THE CRIME WAS COMPLETED ............................................................................ 1

        a.    Does it matter if this is a continuing crime or not? .......... 1

        b.    Jurisdictional issues are not on appeal in this case and do not affect its outcome ............................................. 3

        c.    The Government is incorrect when it argues the "predicate crime was not murder" .................................... 4

        d.    Fire was not actively employed to commit Count 1 .......... 5

        e.    The case should be remanded for a full re-sentencing ......................................................................... 5

CONCLUSION ............................................................................................. 7

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Ball v. United States,*
140 U.S. 118 (1891) ................................................................ 4

*Gall v. United States,*
552 U.S. 38 (2007) ................................................................ 6

*Grunewald v. United States,*
353 U.S. 391 (1957) ................................................................ 2

*McCarthy v. United States,*
394 U.S. 459 (1969) ................................................................ 4

*Toussie v. United States,*
397 U.S. 112 (1970) ............................................................ 1, 2

*United States v. Banks,*
104 F.4th 496 (4th Cir. 2024) .............................................. 5, 6

*United States v. Challoner,*
65 Fed. Appx. 222 (10th Cir. 2003) ........................................ 5

*United States v. Davis,*
1:16-cr-00267-LKG-20 (D. Md.) ............................................ 6

*United States v. Desposito,*
704 F.3d 221 (2d Cir. 2013) .................................................. 5

*United States v. Helem,*
186 F.3d 449 (4th Cir. 1999) .............................................. 2, 3

*United States v. Patel,*
370 F.3d 108 (4th Cir. 2004) ................................................ 5

*United States v. Smith,*
373 F.3d 561 (4th Cir. 2004) ................................................ 1

**Statutes and Other Authorities:**

18 U.S.C. § 844(h)(1) ................................................................ 1

18 U.S.C. § 1201(a)(1) .............................................................. 4

18 U.S.C. § 2261(a)(1) .............................................................. 4

18 U.S.C. § 2261(a)(2) .............................................................. 4

## REPLY ARGUMENT

1.    THE § 844(h)(1) ENHANCEMENT FOR USE OF FIRE ONLY
APPLIES WHEN FIRE IS USED TO COMMIT A CRIME AND IT WAS
ERROR FOR THE DISTRICT COURT TO APPLY THE STATUTE IN A
CASE WHERE FIRE WAS USED AFTER THE CRIME WAS
COMPLETED.

### a.    Does it matter if this is a continuing crime or not?

Whether or not interstate domestic violence is a continuing crime has little bearing on this matter. The continuing offense doctrine is rarely used and applies to a crime that occurs over a series of acts, as opposed to one discrete act. *United States v. Smith,* 373 F.3d 561, 568-69 (4th Cir. 2004) (Michael, J. dissenting); *Toussie v. United States,* 397 U.S. 112 (1970). Nevertheless, even a continuing offense has an endpoint. That is the real issue in this appeal: when does a crime end?

The defendant in *Toussie* was charged with failure to register for the draft. *Toussie*, 397 U.S. at 112. The Government argued he could be charged long past the five-year statute of limitations because each day he did not register was an ongoing criminal act. *Id.* at 114. The Supreme Court disagreed, finding the crime was complete at the time the defendant failed to register. *Id*. at 119.

The Supreme Court used conspiracy as a comparison, noting that the crime in *Toussie* was different from a conspiracy, "...which ... continues as long as the coconspirators engage in overt acts in furtherance of their plot." *Id*. at 122. It goes on to state that "[i]t is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Id*. That line answers the question of when a crime ends. It ends

when the threat that Congress was addressing ends. It is instructive that the *Toussie* Court cited to *Grunewald v. United States*. 353 U.S. 391 (1957).

As Florentine argued in the district court and in his opening brief, *Grunewald* explicitly rejected the idea that attempts to conceal a conspiracy, even through overt acts by the original conspirators, could be used to extend the duration of a conspiracy. *Id.* at 399. The Supreme Court was very clear that it was refusing to extend a conspiracy beyond the accomplishment of its object, even if concealing the conspiracy was a central part of getting away with the crime.

The Government attempts to distinguish *Grunewald* by arguing it applies to completed conspiracies as opposed to a "continuing offense." That distinction highlights Florentine's argument. Conspiracies are the most obvious type of continuing offenses. Yet the Supreme Court case law cited clearly states they end when the object is achieved and do not extend to attempts to conceal the object.

Interstate domestic violence is no different than any other crime. Even under the continuing offense doctrine it must stop at some point. Under the Government's theory and the district court's ruling, it simply continues with no real endpoint. For example, the Government argues the crime only ends when the interstate travel ends. But this clearly runs afoul of the exact rule created by the *Toussie* and *Grunewald* cases; crimes do not extend past their object.

*United States v. Helem* does not change this point. 186 F.3d 449 (4th Cir. 1999). This Court held the theories of liability related to interstate travel

in that case were both that the defendant was able to force his wife across state lines against her will by virtue of beating her and that same travel was forced by the threat of violence. *Id*. at 455. Either way, the argument against conviction in that case was that the law should not extend to acts before the interstate travel. *Id*. at 454. The instant case involves a ruling that interstate domestic violence can extend past the object of the crime. This is a different argument than the one considered in *Helem* and *Helem* sheds no light on Florentine's appeal.

> b.    Jurisdictional issues are not on appeal in this case and do not affect its outcome.

In Footnote 6 of the Government's brief, the Government argues Florentine is attempting to "…have it both ways." This argument appears to be based on the fact that a plea to Count One required interstate travel and the argument on appeal is at odds with the plea to that Count, which is not challenged. This misunderstands Florentine's argument.

The Government's argument on this point relies on the travel from South Carolina to Kentucky being the relevant travel for purposes of the plea. Yet in their recitation of facts, the Government stated Florentine and the victim had been traveling together in North Carolina and South Carolina immediately prior to the killing. JA65. This is enough to trigger the appropriateness of an interstate domestic violence charge and has nothing to do with travel after the killing. Regardless, it was Florentine's right to challenge Count 1 if he had a desire to and he had as strong a right to waive

any such challenge through a plea of guilty. See generally, *McCarthy v. United States*, 394 U.S. 459, 466-67 (1969).

Florentine did not challenge the Government's ability to prosecute him. He did not use the travel that occurred after the crime as a basis for his plea and this argument does not change the argument on appeal.

### c.    The Government is incorrect when it argues the "predicate crime was not murder."

The Government's argument about the predicate crime is incorrect. Murder is the predicate crime for the purposes of this appeal. The plain language of the interstate domestic violence statute reveals this both prongs of the crime require a crime of violence as an essential element of the crime. 18 U.S.C. § 2261(a)(1)-(2). Murder is the essential crime at issue in this prosecution. Murder is completed when the victim is killed. *Ball v. United States,* 140 U.S. 118, 134-35 (1891).

The structure of the statute requires the crime of violence to occur during the travel or because of the travel. But there is no further statutory language that would allow the crime to continue. If there was, it would be stated. Kidnapping is not a helpful analogy, because it contemplates that a person transported across state lines does not have to be alive when such transportation occurs. 18 U.S.C. § 1201(a)(1). Obviously, that would create a much more difficult question for this Court, because the plain language of the statute allows the crime to continue after a victim's death. But because the killing of the victim is not an element of kidnapping, there is no valid comparison between kidnapping cases and Florentine's case.

d.    Fire was not actively employed to commit Count 1.

Florentine is not arguing that fire must be a "but-for" cause of the underlying crime. His argument is that fire must be actively used in the commission of the crime. If the murder occurred prior to the use of fire, the statute does not apply.

The cases cited by the Government support this idea. In *United States v. Patel*, the First Circuit recognized that Congress intended to enhance punishment "for using fire in the commission of a crime." 370 F.3d 108, 117 (4th Cir. 2004). The Second Circuit reviewed a case where the defendant used fire to divert a police car, allowing him to carry out a bank robbery. *United States v. Desposito*, 704 F.3d 221, 227 (2d Cir. 2013). The fire was "critical to his scheme and made the robbery possible." *Id.* at 228. A nearly identical situation was considered in the unpublished Tenth Circuit opinion cited in the Government's brief. *United States v. Challoner*, 65 Fed. Appx. 222 (10th Cir. 2003). Again, in that case an explosive device was used to carry out the crime. The case is also different because the section of the statute under which the defendant was charged allows a conviction for "carrying" an explosive during the commission of a crime. *Id.* at 226. One cannot "carry" fire as contemplated by the statute. But either way, the fire was used to commit the crime, not used after completion of the crime.

e.    The case should be remanded for a full re-sentencing.

The Government cites *United States v. Banks* for the proposition that Florentine should not get a re-sentencing, since the district court stated it would give the same sentence. 104 F.4th 496, 516 (4th Cir. 2024). The

opinion in *Banks* references the district court's statements that he had given a sentence of 25 years concurrent to the 10-year sentences on the convictions that were vacated, so those vacated sentences did not change the outcome of the case and re-sentencing was not warranted. *Id*.[1] In other words, the total sentence was at least in part based on crimes unrelated to the possession of a firearm vacated in the *Banks* opinion and independent of the sentences for those counts.

This case is very different. The advisory guidelines range for the underlying conduct in this case was 210 – 262 months. (JA363). The sentence imposed represented a 50% increase from the advisory guidelines range. In this case the Court should remand the matter for re-sentencing.

Unlike cases involving guidelines enhancements, this case involved a statutory consecutive enhancement. Even though the ultimate sentence was within the statutory range for Count One, without the consecutive 120 months from the use of fire statute it would have been a very significant variance. Larger variances require a more significant explanation and this large of an upward variance would require a very detailed explanation. *Gall v. United States,* 552 U.S. 38, 52 (2007). Whether or not the district court imposes a similar sentence, it should be analyzed under the correct statutory scheme and without the improper enhancement from the use of fire.

---

[1] To the extent it is unclear in the opinion, the docket sheet in the district court for that case verifies the court had imposed a sentence of 300 months and the sentences on the counts that were ultimately vacated were both 120 months concurrent with each other and the 300-month sentence. *United States v. Shakeen Davis,* 1:16-cr-00267-LKG-20 (D. Md.).

## **<u>CONCLUSION</u>**

All crimes end. This gives both defendants and the Government a clear understanding of the parameters of statutes. While crimes can be "continuing" they still reach a definite endpoint. The district court's ruling that crimes occurred on a "continuum" was incorrect. That ruling contemplates no real end to the crime, which is a theory that has never been accepted by any federal court.

<div style="margin-left:40%">

Respectfully submitted,

***<u>s/ Joshua Snow Kendrick</u>***
Joshua Snow Kendrick
KENDRICK & LEONARD, P.C.
Post Office Box 6938
Greenville, SC 29606
(864) 760-4000
Josh@KendrickLeonard.com

</div>

October 28, 2024
Greenville, South Carolina

7

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*1,743*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Georgia Pro*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>October 28, 2024</u>            <u>/s/ Joshua Snow Kendrick</u>
                                    *Counsel for Appellant*

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 28th day of October, 2024, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Leesa Washington
OFFICE OF THE U.S. ATTORNEY
One Liberty Square
55 Beattie Place, Suite 700
Greenville, South Carolina 29601
(864) 282-2109

*Counsel for Appellee*

/s/ Joshua Snow Kendrick
*Counsel for Appellant*